COPE, Judge.
The question presented by this case is the scope of section 319.36, Florida Statutes (1983), which, with exceptions not applicable here, regulates the export of motor vehicles from Florida. The trial court dismissed appellant’s amended complaint as to appellee Heavy Lift Services, Inc., and appellant has brought this appeal.
According to the amended complaint, appellant insurance company insured auto dealerships for loss of vehicles due to theft. Certain motor vehicles were stolen from the dealerships and were illegally exported. The insurance company paid the dealers for their losses, and thereby became subrogat-ed to the rights of the dealers.
Appellant brought suit against several individuals and entities, alleging violations of section 319.36, Florida Statutes (1983). Our court has previously held that section 319.36, a statute containing criminal penalties, also permits civil recovery. Stephen v. L.P. Evans Motors, 417 So.2d 778, 779 (Fla. 3d DCA 1982).[1]
Section 319.36 was enacted to combat a widespread problem of larceny of motor vehicles which was exacerbated “because of the ease with which such vehicles may be shipped out of the state to places where no certificate of title is required for their sale or transfer.” Stephen v. L.P. Evans Motors, 417 So.2d at 779 n. 2 (quoting Ch. 70-289, § 1, Laws of Fla.). The statute was enacted “in order to protect motor vehicle owners and to aid law enforcement officers by rendering it extremely difficult for a person to transport a stolen motor vehicle out of this state via ship.” Id.[2]
The 1983 version of the statute provided in part that no master, captain, or owner of a vessel could take a motor vehicle on board without (a) having received a “right-of-possession certificate” issued by the Department of Highway Safety and Motor Vehicles in the name of the person offering the motor vehicle for transportation, and (b) having examined the motor vehicle to verify that the description and identification number were identical to the description and identification number shown in the certificate of right of possession. § 319.36(2), Fla.Stat. (1983). Under the statute, only the vehicle owner could in the first instance procure such a certificate from the Department of Highway Safety and Motor Vehicles. Id. § 319.36(4).
Pertinent for this appeal is another provision of section 319.36, which provides:
(3) No person shall transport, or cause to be transported, from any port or airport facility in this state any motor vehicle or mobile home, by watercraft or aircraft, outside the United States without first having obtained a certificate of right of possession of such vehicle issued by the department.
§ 319.36(3), Fla.Stat. (1983).
The amended complaint alleged that two individuals, Gustaaf Amian and Siegfried *391 Amian, systematically organized the illegal shipment of the automobiles out of the United States through defendant Samba Shipping Lines. According to the amended complaint, Heavy Lift acted as agent for both the Amians and Samba in storing the vehicles at the port where the vehicles were to he placed aboard outbound ships. Appellant does not allege that Heavy Lift knew the vehicles were stolen. Instead, according to appellant, Heavy Lift enabled and aided the storage, loading and transport of the vehicles by failing to demand proof that its shipper, the defendants Ami-an, had the required certificates of right of possession. Thus, by failing to require the certificates, Heavy Lift is said to have enabled third parties and the defendants Ami-an to ship the stolen vehicles out of the country in violation of Florida law. The trial court concluded that the described activities of Heavy Lift were not regulated by the statute, and dismissed the amended complaint as to Heavy Lift with prejudice.
Examining section 319.36 as a whole, it is clear the legislature in subsection (3) intended to regulate the conduct of “persons,” broadly defined, who transport, or procure the transportation of, motor vehicles described by the statute. The term “person” is employed in a generic sense, as contrasted with the specific identification of the master, captain, or owner of the vessel in subsection (2).[3] For conduct to be proscribed by subsection (3), a person must either transport the motor vehicle from a Florida port without the certificate of right of possession, or cause such transportation to occur. It is clear Heavy Lift did not transport the motor vehicles from a Florida port; the question is whether Heavy Lift “cause[d] [the vehicles] to be transported,” § 319.36(3), within the meaning of the statute.
We construe the term “cause” in the ordinary sense: “to be the ... occasion of; to effect as an agent; to bring about; to bring into existence; to make, to induce, to compel.” Black’s Law Dictionary 200 (5th ed. 1979). See generally United States v. Kenofskey, 243 U.S. 440, 443, 37 S.Ct. 438, 439, 61 L.Ed. 836 (1917); Wilson v. United States, 232 U.S. 563, 567, 34 S.Ct. 347, 58 L.Ed. 728 (1914); Wagner v. United States, 171 F.2d 354, 363 (5th Cir.1948). In the present context, we think “cause to be transported” was intended to require active participation by a “person” in arranging or procuring the transportation of the vehicles from the Florida port. Ancillary conduct which is not an effective or procuring cause of the transportation is not, we think, addressed by the statute.
With that interpretation, we conclude the trial court was correct in dismissing the appellant’s amended complaint. The amended complaint alleged that Heavy Lift issued dock receipts and that it stored the vehicles at the port where the vehicles were to be placed aboard outbound ships. The amended complaint contended that Heavy Lift aided in the transportation of the stolen vehicles “by its failure to demand proof that its shipper ... had the required Certificates of Right of Possession.” There is no allegation that in any active sense Heavy Lift arranged or procured the transportation of the vehicles from the Florida port.[4]
Appellant’s amended complaint is not bolstered by including the legal conclusion *392 that Heavy Lift was the agent of both the shippers, the Amians, and the shipping line, Samba.[5] The appropriate inquiry is whether appellant has pled ultimate facts which would create liability under the statute. On the present state of the pleadings that has not been done.
Appellant’s alternate ground of appeal is that it should have been allowed a further opportunity to amend its complaint. In view of the dearth of authority construing this particular provision of section 319.B6, we believe the appellant should have another opportunity to amend in light of the statutory construction set forth in this opinion. We therefore affirm the dismissal of the amended complaint, but remand for one further opportunity for appellant to amend if, after review of the principles outlined above, appellant can in good faith proffer an amendment.
Affirmed in part, reversed in part, and remanded for further proceedings.

. The Stephen decision ruled that it was negligence per se for a defendant shipping line to fail to obey the statute. Id. at 779 (citing deJesus v. Seaboard Coast Line R. Co., 281 So.2d 198 (Fla.1973)); cf. Fischer v. Metcalf, 543 So.2d 785 (Fla. 3d DCA 1989) (en banc) (criteria for implied private right of action).

. For general background see Ivaran Lines, Inc. v. Waicman, 461 So.2d 123 (Fla. 3d DCA 1984). Chapter 15C-3, Florida Administrative Code, implements the statute.

. Although only owners of motor vehicles are allowed to obtain a certificate of right of possession from the Department of Highway Safety and Motor Vehicles, see § 319.36(4), subsection (3) is not limited to owners. That is so because subsection (7), which prescribes penalties, imposes a misdemeanor penalty on a vehicle owner who violates the provisions of subsection (3) (so long as the owner has not previously been convicted of a violation), but provides a third-degree felony penalty for any violator of subsection (3) who is either a previous violator or who was not the lawful owner of the vehicle at the time of the violation in question. Thus, subsections (3) and (4), when read together, require that the owner obtain the certificate of right of possession in the first instance, and thereafter that any other person who performs acts regulated by subsection (3) must "obtain” the certificate of right of possession from the owner or someone who is in rightful possession of it.

. To the extent this case may illustrate a weakness in the statutory scheme (as both the shipper and ship are apparently now outside the jurisdiction of the Florida courts), corrective measures must necessarily be a matter of legislative, rather than judicial, action.

. While a principal may be vicariously liable for acts of an agent performed within the scope of the agency. Industrial Ins. Co. v. First Nat. Bank, 57 So.2d 23, 26 (Fla.1952); Peninsula Land Co. v. Howard, 149 Fla. 772, 786, 6 So.2d 384, 388 (1942); Industrial Fire & Cas. Co. v. Acquesta, 448 So.2d 1122, 1123 (Fla. 4th DCA 1984), aff'd, 467 So.2d 284 (Fla.1985), the reverse is not also true.